## 61608. DUDAR v. LEWIS.

BIRDSONG, Judge.

Appellant Dudar files this appeal pro se, following a trial of the issues upon a dispossessory warrant brought against Dudar by plaintiff Lewis. Dudar responded pro se to Mrs. Lewis' affidavit for dispossession by contending that in April, 1979, five months after Dudar first rented property from her, Mrs. Lewis signed an agreement stating "I authorize Abdur-Rahim Dib Dudar and his family to live in my house 1802 Vinson Hwy., Milledgeville, Georgia

31061 rent-free for as long as he and his family desire compensating him for the work he did and to be done on said property. I, Ruby A. Lewis, therefore grant the use of my premises to Abdur-Rahim Dib Dudar and his family rent-free freely and without reservations for as long as he and his family desire." Dudar, by way of cross claim, contended the agreement constituted a free and clear gift, entitling him and any member of his family to lifetime use of the premises rent free; that consequently the premises are second-mortgaged to himself and his family at the rate of the fair market value of the rent; that "with the limited life expectancy of Mrs. Ruby A. Lewis and the obligations resulting from 'rent-free,' the agreement constitutes a free and clear gift of the house and lot . . . to me at the death of . . . Mrs. Ruby A. Lewis." He prayed that the property be second mortgaged to himself, for an amount of at least $15,000 for improvements and personal damages, with Mrs. Lewis to pay court costs.

The evidence at trial, with appellant then being represented by an attorney, showed that in November, 1978 following a newspaper rental advertisement by Mrs. Lewis, Mr. Dudar agreed to rent the brick veneer house at $200 per month. The house was situated in a yard enclosed with a fence; Mrs. Lewis lived in a one-bedroom trailer behind the house. Dudar contends Mrs. Lewis was to pay all water, garbage, and insect control bills; Dudar and his family were to share half, or more, of all the fruits and vegetables on the property. In January, 1979, Dudar asked for the $200 January rent back as he found the house in intolerable condition which he intended to repair. At that time, apparently, Mrs. Lewis agreed to hold off on the rent while appellant was making repairs. At trial she denied agreeing to the second sentence of the above-quoted agreement and said it was added on later. Appellant twice asked Mrs. Lewis to have the agreement notarized (so he could file it at the courthouse) but she refused. She testified that she never saw any receipts for the repairs Dudar allegedly performed; that he charged her $180 for cleaning up her yard; that after April when she asked him for rent he laughed in her face; that once he locked the gate and she could not get in to get to her trailer and appellant remarked, when he finally came to unlock the gate, that he would not have this or would not put up with this any longer; that she could not tell any substantial repairs that he had done on the house and that he had changed the locks on the house and she could not get in to inspect it; that she and Mr. Dudar had previously been very friendly when he and his family first moved in but that after April she thought he harassed her; that she never meant to give him possession of the premises rent-free, except to the extent he performed repairs; that she had continued to pay the water and utility bills even up to the present and that recently

the water bill had been in excess of $53 although she had never paid more than $6-7 when she lived there alone; that she had ceased to challenge him about such matters because he would laugh at her. Appellant testified he had in fact paid only $300 in rent to Mrs. Lewis since he moved in in November, 1978; that thereafter he and his family and Mrs. Lewis had become very friendly and she had given him the gift of the premises; that in the ten months he had been living on the property he had made repairs worth $6,000, at the rate of 1,200 hours at $5 per hour; that when Mrs. Lewis retired from her job as a nurse after 32 years she told him that she needed rent money and thereafter she became very unfriendly and unfair about the whole thing.

The jury returned a verdict in favor of the plaintiff and awarded defendant nothing on his counterclaim. *Held:*

We affirm the judgment below. The jury was authorized to conclude that a tenant-landlord relationship existed, that defendant was in arrears, and that sufficient demand was made for possession under the law. The trial judge was correct in ruling that the agreement allegedly signed by Mrs. Lewis in April, 1978, was in any case not supported by any legal consideration or by any adequate consideration, that it was vague in its terms and incapable of enforcement. The court below therefore did not err in granting a directed verdict to the plaintiff on the issue of that agreement. The trial court did not err in granting a directed verdict to the plaintiff on the issue of recovery by appellant, as appellant produced no receipts or other evidence of repairs from which the jury could determine compensation without speculation. The trial court properly instructed the jury that if it did not believe the relationship of landlord-tenant existed or that there was no arrearage or no demand for payment, it should find for the defendant. We find no error of law in the trial of the case.

In his pro se brief, the appellant Dudar contends that appellee's attorney's opening statement that he (the attorney) was "a native-born resident from Baldwin County, Georgia" is an attitude which, since Dudar is a "stranger," made a "race war" inevitable; that the appellee herself is obviously either mentally sick or needs a long-term jail sentence; that all of her testimony was "plugola" by her attorney; that "appellee's equity is very high in the premises and her mortgage is insured if she died so that the mortgage is paid in full to the disappointment of both the judge and the appellee"; and that the trial judge committed intentional prejudicial errors. We have examined the record and find that without question the trial judge was quite excessively courteous to the appellant, fair and impartial in his demeanor, and made no prejudicial errors. As to appellant's

contention that he was denied a fair trial because the appellee's attorney in closing argument described appellant as a cheapskate, a scheming low-down pup, cheating and swindling, stealing and waiting like a snake in the grass, and further described the matter as "the stinkingest case," we have studied the attorney's argument in the light of all the evidence, and we do not find that the argument was based on matters not in evidence or that appellant was denied a fair trial. *Miller v. State,* 226 Ga. 730, 731 (5) (177 SE2d 253).

*Judgment affirmed. Shulman, P. J., and Sognier, J., concur.*

DECIDED JUNE 2, 1981.

Abdur-Rahim D. Dudar, *pro se.*
*Robert Green,* for appellee.